# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **ROSELLA JONES**, *as Guardian and next friend of her minor son, I.J.*, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No.: 4:17-CV-1208-VEH ) ) |
| **CHEROKEE COUNTY BOARD OF EDUCATION and JEFFERY LANE CRANE,** | ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION

This is a civil action filed by the Plaintiff, Rosella Jones, as guardian and next friend of her minor son, I.J.,[1] against the Defendants, the Cherokee County Board of Education (the "Board") and Jeffrey Lane Crane.[2] Originally filed in the Circuit Court of Cherokee County, Alabama, the action was removed to this Court on July 19, 2017. (Doc. 1). Against the Board, the First Amended Complaint sets out the following Alabama state law claims: "Premise[s] Liability" (Count One); "Failure To

---

[1] Rule 5.2 of the Federal Rules of Civil Procedure provides that "the name of an individual known to be a minor" shall be redacted and "the minor's initials" substituted therefor. Fed. R. Civ. P. 5.2 (a)(3).

[2] The First Amended Complaint also names "Fictitious Defendant A," "Fictitious Defendant B," and "Fictitious Defendant C." (Doc. 1-1 at 41-42).

Train" (Count Four); and "Negligence" (Count Five). Against Crane, the first Amended Complaint sets out the following Alabama state law claims: "Assault" (Count Two), and "Battery" (Count Three). Finally, the First Amended Complaint alleges that the Board "is liable to the Plaintiff . . . pursuant to 42 U.S.C. § 1983." (Count Six).[3]

The case comes before the Court on the Board's Motion To Dismiss filed pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 4). For the reasons stated herein, the Motion will be **GRANTED** as to Count Six, the Section 1983 claim. That claim will be **DISMISSED**, and this case will be **REMANDED** to the Circuit Court of Cherokee County, Alabama.

## I.  APPLICABLE STANDARDS

### A.  Lack of Subject Matter Jurisdiction

Rule 12 (b)(1) of the Federal Rules of Civil Procedure provides for the dismissal of an action where the court finds that it does not have subject matter jurisdiction. Rule 12 (b)(6) provides for dismissal for failure of a party to state a claim for which relief can be granted. Where "a Rule 12 (b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12 (b)(1)

---

[3] One additional count, Count Seven, alleges the Alabama state law claim of "Negligence" against the fictitious party defendants. (Doc. 1-1 at 51).

jurisdiction attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977).

A motion to dismiss for lack of subject matter jurisdiction should be granted "only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Ramming*, 281 F.3d at 161. Lack of subject matter jurisdiction may be found through an examination of: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *See id*. The burden of proof on a motion to dismiss for lack of subject matter jurisdiction is on the party asserting jurisdiction. Here, that party is the Board, as it removed this action from state court. *See Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1164 (11th Cir. 2006) (noting "the traditional rule that the party seeking to remove the case to federal court bears the burden of establishing federal jurisdiction").

### B. Failure To State a Claim Upon Which Relief Can Be Granted

If the court determines that subject matter jurisdiction exists, it must then address the Rule 12 (b)(6) motion. *Ramming*, 281 F.3d at 161 (citing *Hitt*, 561 F.2d at 608). Pursuant to Rule 12 (b)(6), a district court cannot dismiss a complaint for

failure to state a claim upon which relief can be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102, 2 L. Ed. 2d 80 (1957); *Blackburn v. City of Marshal*, 42 F.3d 925, 931 (5th Cir. 1995). The court will not look beyond the factual allegations in the complaint to determine whether relief should be granted. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In assessing a claim, a court must accept all well-pleaded facts in the complaint as true and liberally construe all factual allegations in the light most favorable to the plaintiff. *See Spivey*, 197 F.3d at 774; *Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). "However, '[i]n order to avoid dismissal for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations.'" *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992) (quoting *Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989)) (alteration in original).

The "complaint must contain either direct allegations on every material point necessary to sustain a recovery or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995). A plaintiff "is merely required to provide, in his complaint, a 'short and plain statement of the claim

that will give the defendant fair notice of what the plaintiff's claim is and the grounds on which it rests.'" *Lewis v. Fed. Reserve Bank of Atlanta-New Orleans Branch*, No. Civ.A. 04-1452, 2004 WL 2035006, at *3 (E.D. La. Sept. 10, 2004) (quoting *Conley*, 355 U.S. at 47, 78 S. Ct. at 103). Still, a complaint must allege sufficient facts for an inference to be drawn that the elements of the claim exist. *Walker v. South Cent. Bell Tel. Co.*, 904 F.2d 275, 277 (5th Cir. 1990).

**II.    ALLEGATIONS IN THE FIRST AMENDED COMPLAINT**

The First Amended Complaint sets out the following allegations:

7.    On October 12th, 2016, Plaintiff Jones's minor son I.J. ("I.J.") was a student at Cedar Bluff High School, located in Cedar Bluff, Alabama.

8.    On October 12th, 2016, I.J. was a member of the Cedar Bluff High School football team.

9.    On October 12th, 2016, while a member of Cedar Bluff High School football team, I.J. was participating in mandatory practices for the football team on the football practice field at Cedar Bluff High School.

10.    On October 12th, 2016, Defendant Crane was present on the campus of Cedar Bluff High School at the same time at which I.J. was present and participating in school activities at all times relevant.

11.    On October 12th, 2016, I.J. and Defendant Crane's stepson, who was also a member of Cedar Bluff High School's football team engaged in "after the whistle" behavior common in football practices in the deep south.

12. Defendant Crane was present with the full knowledge [of] agents and/or employees of the Defendant Board, namely assistant football coaches of Cedar Bluff High School who, at all time relevant were employees and/or agents of the Defendant Board.

13. Defendant Crane, at the time of, or shortly after the afore-described "after the whistle" behavior, entered onto the practice field at Cedar Bluff High School on October 12th, 2016 where I.J. and other minor students under the care and control of agents and/or employees of the Defendant Board were present.

14. Upon entering the football field at Cedar Bluff High School on October 12th, 2016, Defendant Crane confronted the minor child I.J.; and assaulted and battered the minor I.J.

15. No agent and/or employee of the Defendant Board attempted to stop or arrest Defendant Crane's behavior.

16. Defendant Crane completed his assault and battery upon the minor I.J; and left the practice field at Cedar Bluff High School, yet was allowed to remain at Cedar Bluff High School for the duration of football practice.

17. Plaintiff Jones did not learn of the assault by Defendant Crane upon the person of I.J. until later on the night of October 12th, 2016 when I.J. returned home with injuries.

18. Plaintiff Jones transported the minor I.J. via personal vehicle for the treatment of his injuries visited upon him by Defendant Crane.

19. Defendant Board did not inform Plaintiff Jones of the assault upon I.J. by Defendant Crane.

20. Defendant Board failed to report the assault visited upon I.J. by Defendant Crane to law enforcement agencies.

21. On October 12th, 2016[,] Plaintiff Jones reported the assault of

her son to law enforcement agencies.

22. Defendant Crane was arrested and charged with Assault - 3rd Degree and arrested.

23. On November 29, 2016, Defendant Crane pled guilty to Assault - 3rd Degree and was sentenced to 90 days in jail with said time suspended; probation for a twelve (12) month period; court cost of $212.00 and required to attend anger management classes.

24. Defendant Board's Superintendent Mitchell Guice ("Guice") informed Plaintiff Jones, that Defendant Crane would be banned from attendance at all other high school sporting events in Cherokee County, Alabama.

25. Upon information and belief, despite those representations by Guice to Plaintiff Jones, Defendant Crane has been in regular attendance of high school sporting events in Cherokee County.

26. Upon further information and belief, Defendant Crane, since the incident forming the basis of this instant complaint has been involved with at least one other similar altercation with minor high school student during such sporting events.

(Doc. 1-1 at 42-44, ¶¶7-26).

### III. ANALYSIS

In Count Six, the First Amended Complaint alleges that the Plaintiff had a right under the Fourteenth Amendment "to be free from suffering harm while under the care of the Defendant." (Doc. 1-1 at 50, ¶76). The First Amended Complaint also alleges that "I.J. suffered harm [while] under the care [and custody] of the . . . Board; caused by . . . Crane attacking I.J. while on [the] Board's property." (Doc. 1-1 at 50,

¶77, 80). The Plaintiff also alleges that this harm was "foreseeable" and "preventable," that Crane had a "history of losing his temper, and accosting minor students [on] school grounds," and that the "Board's failure to follow its own policies of monitoring visitors to its schools was the proximate cause of I.J.'s injuries." (Doc. 1-1 at 50, ¶¶78, 79, 85; *see also generally* doc. 1-1 at 50-51, ¶¶73-88).

The Eleventh Circuit has noted:

> "[T]he Due Process Clause was intended to prevent government officials from abusing their power, or employing it as an instrument of oppression." *County of Sacramento v. Lewis*, 523 U.S. 833, 846, 118 S.Ct. 1708, 1716, 140 L.Ed.2d 1043 (1998) (internal quotations and citations omitted). The substantive component of the Due Process Clause "protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.'" *Collins v. City of Harker Heights*, 503 U.S. 115, 125, 112 S.Ct. 1061, 1068, 117 L.Ed.2d 261 (1992) (*quoting Daniels v. Williams*, 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986)).

*Davis v. Carter*, 555 F.3d 979, 981–82 (11th Cir. 2009). However, the Eleventh Circuit has also noted that:

> "not every wrong committed by a state actor rises to the level of a 'constitutional tort,' sufficient to trigger a substantive due process violation," *Lee v. Hutson*, 810 F.2d 1030, 1032 (11th Cir.1987), as "the Constitution does not protect against all encroachments by the state onto the interests of individuals," *Robertson v. Hecksel*, 420 F.3d 1254, 1262 (11th Cir.2005). The Supreme Court has "previously rejected claims that the Due Process Clause should be interpreted to impose federal duties that are analogous to those traditionally imposed by state tort law," *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 128, 112 S.Ct. 1061, 1070, 117 L.Ed.2d 261 (1992), and it is clear that "[m]ere

8

> negligence does not rise to the level of a Fourteenth Amendment violation," *Bendiburg v. Dempsey*, 909 F.2d 463, 470 (11th Cir.1990); *see also Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 849, 118 S.Ct. 1708, 1718, 140 L.Ed.2d 1043 (1998) ("[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process."); *Waddell v. Hendry Cnty. Sheriff's Office*, 329 F.3d 1300, 1305 (11th Cir.2003) ("We know for certain ... that a showing of negligence is insufficient to make out a constitutional due process claim.").

*Maddox v. Stephens*, 727 F.3d 1109, 1119 (11th Cir. 2013); *see also*, *Davis*, 555 F.3d at 982 ("[T]he Fourteenth Amendment is not a 'font of tort law' that can be used, through Section 1983, to convert state tort claims into federal causes of action."). Furthermore, "'[N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors.'" *Davis*, 555 F.3d at 982 (*quoting DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 195, 109 S.Ct. 998, 1003, 103 L.Ed.2d 249 (1989)).

That having been said, the Plaintiff alleges that "I.J. suffered harm [while] under the care [and custody] of the . . . Board." (Doc. 1-1 at 50, ¶77, 80). This allegation incorrectly assumes a "general duty of protection" arose because I.J. was on school facilities participating in a school function. It is true that "[a] duty of protection <u>can</u> arise where the state has a custodial relationship with the individual, arising from such circumstances as incarceration in prison or involuntary commitment

in a mental institution." *Davis*, 555 F.3d 979, 982 (11th Cir. 2009) (internal citations omitted). However, "[v]oluntary attendance at a school event does not create a custodial relationship with the school sufficient to give rise to a constitutional duty of protection." *Id.* at 982 (internal citations omitted); *see also*, *Nix v. Franklin Cty. Sch. Dist.*, 311 F.3d 1373, 1378 (11th Cir. 2002) ("This court has ruled that schoolchildren are not in a custodial relationship with the state."); *Teets v. Hillsborough Cty. Sch. Bd.*, No. 8:15-CV-0094-MSS-MAP, 2016 WL 7115981, at *4 (M.D. Fla. Nov. 7, 2016), appeal dismissed sub nom. *KAYCEE TEETS, ET AL v. HILLSBOROUGH COUNTY SCHOOL BOA, ET AL* (Dec. 7, 2016) ("The law is plainly and uniformly established that while at school students are not in a custodial relationship with the state.").

In the absence of a general duty of protection created by a custodial relationship,

> plaintiffs face a high bar when attempting to establish a substantive due process violation as "conduct by a government actor will rise to the level of a substantive due process violation only if the act can be characterized as arbitrary or conscience shocking in a constitutional sense." *Waddell*, 329 F.3d at 1305. Even intentional wrongs seldom violate the Due Process Clause, *id.*, and "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense,' " *Cnty. of Sacramento*, 523 U.S. at 846, 118 S.Ct. at 1716 (quoting *Collins*, 503 U.S. at 129, 112 S.Ct. at 1071). "Determinations of what is egregious conduct must not be made in the glow of hindsight; decisions made by a government actor must be egregious—that is, shock the

conscience—at the time the government actor made the decision." *Waddell*, 329 F.3d at 1305. Conduct intended to injure in some way that is unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level, *id.*, and we must conduct an "exact analysis of circumstances before any abuse of power is condemned as conscience shocking," *Cnty. of Sacramento*, 523 U.S. at 850, 118 S.Ct. at 1718–19.

*Maddox*, 727 F.3d at 1119.

In explaining the "shocks the conscience" standard, the Eleventh Circuit has stated:

> The somewhat nebulous "shocks the conscience" phrase has taken on different meanings in different cases, depending on a given case's factual setting. For many contexts, the Supreme Court has yet to determine how serious misconduct must be to be characterized as "conscience shocking" (a standard which "duplicates no traditional category of common-law fault," [*Cnty of Sacramento*, 523 U.S. at 848], but the Court has made clear that a showing of <u>mere negligence is insufficient to make out a constitutional due-process claim</u>: "[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." *Id.* at 849, 118 S.Ct. 1708; *see also Davidson v. Cannon*, 474 U.S. 344, 347–48, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986); *Daniels v. Williams*, 474 U.S. 327, 330–32, 106 S.Ct. 677, 88 L.Ed.2d 662 (1986). The Court has, however, pointed out that <u>actions "intended to injure in some way unjustifiable by any government interest" are those "most likely to rise to the conscience-shocking level</u>." [*Cnty of*]*Sacramento*, 523 U.S. at 849[]. Acts that fall between the poles of negligence and malign intent require courts to make "closer calls," *id.* at 849[], in which the determination of what shocks the conscience is context-specific. "Deliberate indifference that shocks in one environment may not be so patently egregious in another...." *Id.* at 850[].

\* \* \*

11

[W]e must pause to consider the pronouncements of the Supreme Court regarding the boundaries separating tortious injuries from constitutional harms. "As a general matter, the [Supreme] Court has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this [uncharted] area are scarce and open-ended." *Collins v. City of Harker Heights, Texas*, 503 U.S. 115, 125, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992). When shaping the contours of due-process law, the Court has often emphasized the need to prevent the Fourteenth Amendment from becoming a surrogate for conventional tort principles. Confining liability to more culpable actors, as suggested in [*Cnty of*] *Sacramento*, is in accordance with the intent of the Due Process Clause: " 'to secure the individual from the arbitrary exercise of the powers of government.' " *See Daniels*, 474 U.S. at 331, 106 S.Ct. 662 (quoting *Hurtado v. California*, 110 U.S. 516, 527, 4 S.Ct. 111, 28 L.Ed. 232 (1884)). In *Daniels*, the Court found that an inmate plaintiff's slip-and-fall incident at a jail was "quite remote" from the concerns of the Due Process Clause. *Id.* at 332, []. The Court went on to say:

> Far from an abuse of power, lack of due care suggests no more than a failure to measure up to the conduct of a reasonable person. To hold that injury caused by such conduct is a deprivation within the meaning of the Fourteenth Amendment would trivialize the centuries-old principle of due process of law.
>
> ... Our Constitution deals with the large concerns of the governors and the governed, but it does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society. We have previously rejected reasoning that " 'would make of the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States.' " Paul v. Davis, 424 U.S. 693, 701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), quoted in *Parratt v. Taylor*, 451 U.S. [527, 544, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)].

*Id*.

*Nix*, 311 F.3d at 1375–76 (emphasis added).

The Eleventh Circuit has examined conduct much more egregious than that alleged in the instant case and held that a due process claim was not cognizable. For example in *Dacosta v. Nwachukwa*, 304 F.3d 1045, 1047 (11th Cir. 2002), a professor slammed a door in a student's face. When the student tried to protect herself from the door by holding up her hand, her arm shattered the glass on the door and became lodged therein. *Dacosta*, 304 F.3d at 1047. The professor then swung the door violently several times in an attempt to get the student off the door, and ultimately reached through the cracked glass pane and shoved the student's face in an attempt to dislodge her. *Id.* The professor was ultimately restrained by other students until the police arrived, and he was arrested for criminal battery. *Id.* The Eleventh Circuit held that the Plaintiff "cannot point us to any authority suggesting that such conduct, malicious as it may have been, amounted to a deprivation of her rights under the U.S. Constitution, as opposed to a deprivation of her rights under Georgia law." *Id*. at 1048.

In *Nix*, several high school students, at the direction of their teacher, held onto a live wire during a voltage-reading demonstration. *Nix*, 311 F.3d at 1374. The teacher had informed the students that they might die if they touched the exposed part

of the wire. *Id.* The teacher then increased the power running through the wire and turned away to answer a question. *Id.* When he turned back he found a student who had been killed by the live wire. *Id.* In denying Section 1983 relief to the plaintiffs, the court noted that "[t]his court has been explicit in stating that 'deliberate indifference' is insufficient to constitute a due-process violation in a non-custodial setting." *Id.* at 1377. The Eleventh Circuit also noted that "[o]nly in the limited context of due-process claims based on excessive corporal punishment has this court held that the intentional conduct of a high-school educator may shock the conscience." *Id*. at 1378 (discussing *Neal*, 229 F.3d 1069).[4]

In *Davis v. Carter*, 555 F3d 979 (11th Cir. 2009), the plaintiff's decedent, Davis, died while practicing football. The plaintiffs alleged that

> the coaches failed to provide enough water to keep Davis hydrated, ignored signs and Davis's complaints that he was becoming dehydrated, subjected Davis to rigorous conditioning drills at the end of a two-hour practice, and failed to attend to Davis until after a team meeting, even though he had collapsed in the middle of the drills. Plaintiffs allege the coaches' actions culminated in Davis's death during the early morning hours the following day.

*Davis*, 555 F.3d at 980–81. Citing and discussing *Nix* and *Dacosta*, the Eleventh Circuit wrote:

---

[4] In *Nix*, the Eleventh Circuit also noted that "if a teacher's intentional tort (as in *Dacosta*) does not 'shock the conscience,' the deliberate indifference attributed, in the case at bar, to Brown cannot survive summary judgment." *Id.* at 1378-1379.

> In this school setting case, the complaint's allegations of deliberate indifference, without more, do not rise to the conscience-shocking level required for a constitutional violation. While the circumstances of this case are truly unfortunate, Plaintiffs' claims are properly confined to the realm of torts. We need not reach the second part of the qualified immunity analysis.

*Id.* at 984.[5]

On this issue, the Court is persuaded by the approach taken by Judge Albritton, of the Middle District of Alabama, in *Walton ex rel. R.W. v. Montgomery Cty. Bd. of Educ.*, 371 F. Supp. 2d 1318 (M.D. Ala. 2005) (Albritton, J.). In that case, the plaintiff's minor child had been teased and ultimately struck in the eye by another student for no apparent reason. In addressing the Section 1983 claim against the school board, Judge Albritton wrote:

> The [Board] contend[s] that this case does not represent an exception to the general rule that the Constitution does not require the State to protect the liberty of citizens from private actors. The Plaintiff argues in response that there was deliberate indifference to an extremely great risk of serious injury to R.W.
>
> This court has previously interpreted Supreme Court precedent on this issue, which has determined that the Fourteenth Amendment's Due Process Clause does not require the State to protect the life, liberty, and

---

[5] In its Motion, the Defendant argues the standards set out above. The Plaintiff's response fails to address these standards at all. Instead, the Plaintiff contends that the Board is not entitled to Eleventh Amendment immunity for the Section 1983 claim (doc. 5 at 6-13), argues that the First Amended Complaint sets forth a "plausible" claim (*see* doc. 5 at 5-6, 13-14), and argues that Section 1983 claims are not subject to a "heightened pleading" standard (doc. 5 at 14-15). None of these arguments have been made by the Defendant regarding the Section 1983 claim, and none of them inform this Court's decision. Therefore, the Court does not address them.

property of its citizens against private actors, and found that the State had no duty to protect a student of a public university from harm from a third party. *Griffin v. Troy State Univ.*, 333 F.Supp.2d 1275, 1280 (M.D.Ala.2004). An exception to the rule that the State does not have to protect its citizens from third parties may arise when a person is held in the custody of the State. *Wright v. Lovin*, 32 F.3d 538, 540 (11th Cir.1994). Under federal law, however, "schoolchildren are not in a custodial relationship with the state." *Nix v. Franklin County School Dist.*, 311 F.3d 1373, 1378 (11th Cir.2002). As more fully explained in *Wyke v. Polk County School Board*, 129 F.3d 560 (11th Cir.1997), "[c]ompulsory school attendance laws alone are not a 'restraint of personal liberty' sufficient to give rise to an affirmative duty of protection." *Wyke v. Polk County School Bd.*, 129 F.3d 560, 569 (11th Cir.1997); *see also Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 655, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995) ("We do not, of course, suggest that public schools as a general matter have such a degree of control over children as to give rise to a constitutional 'duty to protect.'") (*citing DeShaney v. Winnebago County Dept. of Social Servs.*, 489 U.S. 189, 200, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989)).

The Eleventh Circuit has explained that two applicable principles emerge from due process jurisprudence:

> (1) generally, those individuals not in state custody will have no due-process claim for unsafe conditions; and (2) specifically, in a classroom setting, courts have not allowed due-process liability for deliberate indifference, and, moreover, will only allow recovery for intentional conduct under limited circumstances.

*Nix*, 311 F.3d at 1378. The intentional conduct identified in *Nix* as meeting the "shock the conscience" standard of substantive due process is excessive corporal punishment by an educator. *Id*.

The case relied on by [the plaintiff] in support of her claim concerns a substantive due process claim of students sexually harassed and abused by a teacher. *See Does v. Covington County School Bd. of*

> *Educ.*, 930 F.Supp. 554, 577 (M.D.Ala.1996). That analysis arguably would fall within the second principle identified by *Nix*: intentional conduct by state actors.
>
> The facts in this case, which are largely undisputed, are that R.W. was a student injured by another student. This case does not concern sexual harassment or abuse or any other intentional act perpetrated by any teacher or other employee of the Board. Rather, Walton contends that the Board and its employees were deliberately indifferent to a risk of harm by a third party. Because R.W. was not in the custody of the State and did not suffer harm from an intentional act of any State actor, there is no constitutional violation. Accordingly, the court concludes that summary judgment is due to be GRANTED as to the Plaintiff's due process claim[.]

*Walton ex rel. R.W.*, 371 F. Supp. 2d at 1323–24.

As in *Walton*, in the instant case the Plaintiff's minor child was not in the custody of the Board. Furthermore, a non-state actor, Crane, is directly responsible for her child's injuries. Finally, anything which the Board might have done wrong would be purely negligence or some other creature of Alabama tort law. Its conduct does not rise to the "shocks the conscience" level.

For this reason, the Section 1983 claim against the Board will be **DISMISSED**. Furthermore, since that is the only claim over which this Court has original jurisdiction, pursuant to 28 U.S.C. § 1367(c)(3) the Court will decline to exercise supplemental jurisdiction over the remaining state law claims. They will be **REMANDED** to the Circuit Court of Cherokee County, Alabama. A separate Order

will follow.

**DONE** and **ORDERED** this 10th day of October, 2017.

**VIRGINIA EMERSON HOPKINS**
United States District Judge